**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROAD SPRINKLER FITTERS LOCAL
UNION NO. 669, affiliated with The
United Association of Journeymen
and Apprentices of the Plumbing
and Pipefitting Industry of the
United States and Canada,

AFL-CIO,
Plaintiff-Appellee,

v.

POWER CITY HEATING & PLUMBING,
INCORPORATED,
Defendant-Appellant.

No. 97-1892

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CA-93-97-5)

Submitted: January 20, 1998

Decided: February 25, 1998

Before NIEMEYER and LUTTIG, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Stanley G. Burech, Donna L. Crow, BURECH & CROW, St. Clairs-
ville, Ohio, for Appellant. William W. Osborne, Jr., Robert H. Mor-

silli, OSBORNE LAW OFFICES, P.C., Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Power City Heating & Plumbing, Inc. (Power City), appeals the district court's order granting summary judgment in favor of Road Sprinkler Fitters Union No. 669 (Local 669) on the issue of liability, thereby enforcing an arbitration award based on the collective bargaining agreement (Project Agreement) between Local 669 and Power City. Jurisdiction is based on § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1994). Power City argues that an arbitration committee (the Committee) lacked jurisdiction to hear and decide the dispute because the Committee was improperly selected and because the Committee disregarded several procedural errors committed by Local 669 that were in violation of the Project Agreement. This panel has already granted Power City's motion to submit this case on the briefs. Finding no merit to these contentions, we affirm.

The parties' dispute arises from the installation of a sprinkler system for Wheeling Hospital. The terms and conditions for all labor were governed by the Project Agreement executed by Wheeling Hospital, the Upper Ohio Valley Building & Construction Trades Council (BCTC), and its affiliated unions, the Ohio Valley Construction Employers Council (OVCEC), and all contractors who performed work on the project. When the dispute arose, Local 669 and Power City were signatories to the Project Agreement, which provides for final and binding arbitration of grievances. This case arose from Power City's refusal to utilize workers from Local 669.

2

Power City began work on a portion of the project utilizing a different union, Local 83, to install the sprinkler system. A dispute developed in which Local 669 contended that it had the exclusive right under the Project Agreement to install the system because it was a signatory to the Project Agreement. After Power City continued to employ labor from Local 83, Local 669 organized picketing of Power City at the project and then reduced its grievance to writing.

Local 669's grievance was heard on April 15, 1993, by the Committee, whose members were selected by BCTC and OVCEC. At the arbitration hearing, Power City contended that the Committee was without jurisdiction to consider Local 669's grievance because Power City should have been permitted to appoint three members to the Committee. The Committee noted that under Paragraph 9 of the Project Agreement, OVCEC and/or Power City may appoint three members to the six-member Committee. The Committee further noted that Power City was aware of Local 669's grievance and had requested a continuance of the hearing, without expressing a desire to appoint three members to the Committee.* Consequently, the Committee concluded that Power City waived its right to make appointments to the Committee. The Committee further found Power City's procedural challenges meritless and ordered Power City to execute the Project Agreement and utilize workers from Local 669.

In May 1993, Local 669 filed a complaint and then an amended complaint seeking to compel enforcement of the arbitration award. Power City interposed a counterclaim in which it sought to vacate the decision and the award. Power City argued that the Committee was not properly selected and therefore lacked jurisdiction to issue an award, and that Local 669 did not follow the procedural requirements set forth in Paragraph 9 of the Project Agreement. On cross-motions for summary judgment on the issue of liability by both parties, the

_____

*The Committee noted that Power City was aware of Local 669's grievance by April 2, 1993. The Committee further explained that the arbitration hearing was originally scheduled for April 6, 1993, and that pursuant to a request from Power City, the matter was rescheduled for April 15, 1993, at 10:00 a.m. On April 14, 1993, Power City claimed that it could not attend the arbitration hearing at 10:00 a.m. and the hearing was rescheduled for 8:30 a.m.

district court concluded that the Committee's decision and award was derived from the essence of the parties' contract, that the Committee properly construed the terms of the Project Agreement, and that the Committee correctly found that Power City violated the Project Agreement. The court subsequently denied Local 669's request for damages and dismissed the action.

Because "the question of whether an arbitrator exceeded the scope of his authority is a question of law," this court reviews the ruling of the district court de novo. Island Creek Coal Co. v. District 28, UMWA, 29 F.3d 126, 129 (4th Cir. 1994) (citing Upshur Coals Corp. v. UMWA, Dist. 31, 933 F.2d 225, 228 (4th Cir. 1991)). Federal courts must give "special judicial deference" to an arbitrator's decision, and the court's review of an arbitrator's award under § 301 is very limited. Id. Because the parties to a collective bargaining agreement bargained for an arbitrator to interpret the contract, federal courts should not substitute their interpretation of the labor contract for the arbitrator's. See id. Instead, federal courts should overturn the decision of an arbitrator only if the decision is not based on the terms of the collective bargaining agreement. See United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987); Island Creek, 29 F.3d at 129. Thus, an arbitrator's award will be overturned only if the arbitrator "based his award on his own personal notions of right and wrong, for only then does the award fail to draw its essence from the collective bargaining agreement." Upshur Coals Corp., 933 F.2d at 229 (citations omitted).

Here it is clear that the arbitration award draws its essence from the underlying Project Agreement. First, the record reveals that Local 669 signed the Project Agreement on June 11, 1992, and that Power City signed it on September 15, 1992. Therefore, the Committee correctly found that both parties were signatories to the Project Agreement. See International Longshoremen's Ass'n v. Cataneo Inc. , 990 F.2d 794, 799 n.11 (4th Cir. 1993) (stating that a grievance committee decision or an arbitration award "cannot be overturned as long as it is based upon some support in the record."). The Committee also properly rejected Power City's contention that Local 669 violated the procedural requirements set forth in Paragraph 9 of the Project Agreement. Because the Committee had the authority to interpret the Project Agreement which set forth the grievance and arbitration procedures,

4

these procedural issues were properly left for the Committee to decide. See Glass v. Kidder Peabody & Co., 114 F.3d 446, 453 (4th Cir. 1997) (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964) ("`[P]rocedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator")). Finally, the Committee construed the Project Agreement's directive under Paragraph 9 "that three members of the Committee should be selected by OVCEC and/or the employer (Power City), whichever is applicable." In concluding that the choice of three Committee members by OVCEC was "applicable," the Committee noted that Power City failed to choose three arbitrators in a timely fashion and thereby waived its right to select members. Consequently, Power City has failed to show that the Committee's decision was premised on its own notions of right and wrong.

Accordingly, Power City's contentions that the Committee did not have jurisdiction to resolve this dispute and that the arbitration award fails to draw its essence from the Project Agreement are without merit. We therefore affirm the district court's grant of partial summary judgment to Local 669.

AFFIRMED

5